IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| v. | : | CRIMINAL CASE NO.: |
| THOMAS MENSAH ADDAQUAY | : | 1:20-CR-0045-LMM-JSA |
| and CLARA KARABANI, | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

This case is before the undersigned on several pretrial motions. As explained below, the pending motions for bill of particulars [34][40] are **GRANTED IN PART, DENIED IN PART**, and the motions to sever counts [36][41], and to sever defendant [37] are **DENIED**, although the latter denial is without prejudice to re-filing as explained below.

### I.     THE INDICTMENT

Count One of the Indictment [1] alleges that Defendants Addaquay and Karabani conspired to commit bank fraud (in violation of 18 U.S.C. § 1344) and wire fraud (in violation of 18 U.S.C. § 1343), between January 2016 and April 2018. Indictment [1] ¶ 1. The alleged manner and means of the conspiracy "included, among others," two separate scams referred to as the "romance scam" and a "business email compromise scam." *Id*. ¶¶ 2-10. In the so-called "romance

1

scam," the defendants allegedly created fake personas on online dating websites for purposes of gaining trust and affection of customers on those sites looking for romantic partners, and then made false statements as to an urgent need for money for purposes of convincing those customers to send money to accounts controlled by the Defendants. *Id*. ¶¶ 2-5.  The Defendants then withdrew and transferred the funds to other accounts that they controlled. *Id*. ¶ 5.  In the so-called "business email compromise scam," the Defendants allegedly conspired to compromise legitimate business email accounts, including by "spoofing" the email addresses, and to send false emails from those compromised email accounts requesting that payment be made pursuant to a purported business transaction, to accounts created and controlled by Defendants. *Id*. ¶¶ 6-10.  Counts Two through Seven (the "Wire Fraud Counts") allege several instances of wire fraud executed in furtherance of the schemes to defraud alleged in Count One.  The Wire Fraud Counts identify six specific bank wire transfers by date, the receiving bank, the amount, and the initials of the victim. *Id*. ¶ 13.

Count Eight alleges that Defendants engaged in a conspiracy to commit illegal money laundering, in violation of 18 U.S.C. §1956(h), involving the proceeds of wire fraud. *Id*. ¶ 8.  Counts Nine through Thirteen allege five specific money laundering transactions, identifying the date and a description of the transaction. *Id*. ¶¶ 9-17.

Finally, Count Fourteen alleges a separate bank fraud scheme committed solely by Defendant Addaquay on or about May 1, 2019. In this scheme, Addaquay allegedly opened a bank account under a fictitious identity, using a Georgia driver's license number belonging to another real person, and then deposited funds into and attempted to withdraw funds from that account using that false identity. *Id*. ¶¶ 18-24.

## II. DISCUSSION

### A. *Bill Of Particulars*

The purpose of a true bill of particulars is threefold: "to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985) (citations omitted). A bill of particulars, properly viewed, supplements an indictment by providing the defendant with information necessary for trial preparation even if not required to be included in the indictment itself. *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (italics omitted).

Generalized discovery, however, is not an appropriate function of a bill of particulars, and is not a proper purpose in seeking the bill. *Id*., at 1442; *United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981). Similarly, the Eleventh

Circuit has held that a bill of particulars should not "automatically [be] accorded the status of a supplement to an indictment." *United States v. Anderson*, 799 F.2d 1438, 1442 (11th Cir. 1986). And a defendant is not entitled to a bill of particulars "with respect to information which is already available through other sources," including discovery. *United States v. Martell*, 906 F.2d 555, 558 (11th Cir. 1990); *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir.), *modified on other grounds*, 801 F.2d 378 (11th Cir. 1986).

Importantly, "[t]he defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *United States v. Kendall*, 665 F.2d 126, 135 (9th Cir. 1981). Thus, the Government need not "explain the legal theories upon which it intends to rely at trial." *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980). Nor is a bill of particulars available to learn details as to the Government's evidence supporting a charge. That evidentiary information is "detail to which [the Defendant] is not entitled in a bill of particulars . . . ." *United States v. Chaidez-Ontiveros*, No. 1:11–CR–0264–AT–JFK, 2011 WL 7574634, *2 (N.D. Ga. October 25, 2011). After all,

> [T]here is a difference between being surprised by the charge and being surprised by the evidence supporting a charge. The function of the bill of particulars is to reduce surprise at the charge, that is, to enable the defendant to identify what he is alleged to have done in violation of law. It is not to eliminate surprise with respect to evidence offered in support of a charge that is clearly understood by the defendant.

*United States v. Scrushy*, No. CR-03-BE-530-S, 2004 WL 483264, at *9 n. 5 (N.D.Ala. March 3, 2004).

Defendants ask, among other things, for an explanation of any other fraud schemes, in addition to the "romance fraud" and "business email compromise schemes," which form the manner and means of the wire and bank fraud conspiracy alleged in Count One. Currently, the manner and means of the fraud conspiracy is worded as "including" those two specific scams, "***among others***" that are not enumerated. Indictment [1] at p. 3 (emphasis added). Defendants thus demand that the vague "among others" language be cured to provide a clear statement as to the manner and means of the conspiracy.

The Court agrees that the lazy statement "among others" is insufficient to allow Defendants to prepare for trial and guard against surprise and double jeopardy. To the extent this phrase expands the scope of the conspiracy beyond the romance fraud and business email compromise schemes, Defendants have no notice as to even the basic nature of that additional conduct. This omission necessarily deprives Defendants of the ability to prepare their defense against any such unstated fraud scheme and would subject them to potential surprise. A bill of

particulars is warranted to address this deficiency within **FOURTEEN (14) DAYS**.[1]

The Court otherwise denies the additional requests by Defendants for particulars. Defendants demand identification of "names and relevant actions" of all known conspirators. The Court's Pretrial Scheduling Order, however, already requires the Government to disclose the names of known unindicted conspirators. *See* Order [19][28] at 10. The Court declines to order additional disclosure of "all relevant actions" of all conspirators, as this constitutes evidentiary detail to which Defendant is not entitled by way of a bill of particulars. The Defendant's right to such evidentiary detail, rather, is set forth by the extensive set of rules that govern the disclosure of pretrial discovery, including Fed.R.Civ.P. 16, and the Jencks Act, 18 U.S.C. § 3500. The Government represents that it has produced substantial discovery in this case in compliance with these standards, and Defendants have filed no motion to compel alleging otherwise.

The remainder of Defendants' requests fail for the same reasons. Although Count One identifies a date range and a detailed explanation of two specific fraud schemes that underly the conspiracy, Defendants complain that the language

---

[1] The prosecution may also elect to provide this additional notice in a superseding indictment within the same deadline; if such a superseding indictment is obtained with sufficient language to resolve this deficiency, no separate bill of particulars is required.

otherwise fails to identify all specific acts or transactions that they are alleged to have committed in furtherance of and during the course of the conspiracy. But the Defendants are not entitled to a charging document that lists every individual act in furtherance of a conspiracy, where that conspiracy is otherwise well explained in the indictment, and where the Government has produced the discovery to which Defendants are entitled. Except for whatever conduct, if any, might be included in the "among others" modifier, the indictment otherwise sufficiently describes the nature of the schemes, and enables Defendants to meaningfully review the Government's evidence and other material produced in discovery.

Thus, the Court **GRANTS IN PART, DENIES IN PART** the Motions for Bill of Particulars [34][40]. The Government is **ORDERED** to file a **BILL OF PARTICULARS** within **FOURTEEN (14) DAYS** as explained above.

B.   *Motion To Sever Counts*

Defendants argue that Count Fourteen – which charges Addaquay alone in a separate bank fraud scheme – should be severed from the remaining counts against Addaquay and Karabani. Joinder and severance of counts are governed by Rules 8(a) and 14, Fed.R.Civ.P. The Court must conduct a two-step inquiry, to determine first whether the initial joinder of counts was permissible under Rule 8(a) and then, second, even if joinder was permissible, whether sufficient prejudice has been shown to justify severance anyway under Rule 14.

Rule 8(a) allows joinder of charges against a defendant in a single defendant "if the offenses charged … are of the same or similar character, or are based on the same act or transaction or are connected with or constitute parts of a common scheme or plan." This is a permissive rule, "construed broadly in favor of initial joinder." *United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002).

The Government does not contend that the bank fraud scheme in Count Fourteen is part of the same series of acts or transactions as the wire and bank fraud and money laundering charges that underlie Counts One through Thirteen. But as noted above, Rule 14 allows joinder of offenses that "are of the same or similar character," regardless of whether those offenses are otherwise part of the same series of acts or transactions.

> Indeed, Rule 8(a) is not limited to crimes of the same character but also covers those of similar character, which means "nearly corresponding; resembling in many respects; somewhat alike; having a general likeness.' Moreover, when offenses are joined under Rule 8(a) by virtue of their "same or similar character," the offenses need only be similar in category, not in evidence.

*Hersh*, 297 F.3d at 1241.

Under this inclusive standard, Count Fourteen was properly joined under Rule 8(a) as being of at least similar, if not same, character as the other fraud counts. Count Fourteen alleges a bank fraud scheme involving use of a false identity to create and deposit funds into a bank account, and to use control over that account to fraudulently withdraw proceeds. The schemes underlying Count

One – which interrelate with the remainder of the fraud and money laundering counts – also involve wire and bank fraud.  Addaquay is similarly alleged in those counts to use (or conspire to use) false personas, identities, and to impersonate others using spooked email address, to obtain funds under false pretenses, and to then use bank accounts controlled by himself or conspirators to withdraw the proceeds.  While the schemes were not simultaneous, they were separated in time by only approximately one year.   These schemes were all at least of similar character and thus were properly joined.

Nevertheless, Rule 14 grants a court discretion to order a separate trial of even properly-joined counts if it appears that the defendant is prejudiced by their joinder.  *See* Fed. R. Crim. P. 14(a).  Such relief, however, is available only when a defendant can show "specific and compelling prejudice."  *United States v. Zielie*, 734 F.2d 1447, 1464 (11th Cir. 1984).  "Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion."  *Zafiro v. United States*, 506 U.S. 534, 538-539 (1993).  The Eleventh Circuit has consistently found that limiting instructions to the jury are a permissible, less drastic and preferred remedy to severance.  *See, e.g., United States v. Francis*, 131 F.3d 1452, 1459 (11th Cir. 1997).

To attempt to show such prejudice, Addaquay first states that his choice to testify in his own defense at trial as to Counts One through Thirteen might be impeded by the risk of being cross-examined as to the conduct alleged in Count Fourteen.  The implication of this argument is that Addaquay might perceive the evidence as to Count Fourteen to be stronger or would subject him to more powerful impeachment.  But mere differences in quality or strength of evidence supporting different counts is not in itself sufficient prejudice to justify severance.

Moreover, the dilemma Addaquay posits is at best speculative, and if anything would appear to likely exist regardless of severance.  A testifying defendant would be potentially subject to cross examination as to specific instances of conduct related to truthfulness—including other fraudulent conduct— regardless of whether those instances are formally included in the charging instrument before the jury or not.  See Fed.R.Evid. 608(b). Moreover, given the similarity of the alleged crimes, extrinsic evidence relating to the identity theft/ bank fraud scheme embodied in Count Fourteen might very well be admitted under Fed.R.Evid. 404(b), as tending to show the Defendant's intent, knowledge, and ability, including as to how to use false personas and control bank accounts in false circumstances.  Addaquay has thus not borne his burden to show that severance would necessarily eliminate the prospect of being cross-examined on these facts.

Addaquay also argues that the admission of evidence of the identity theft conduct embodied in Count Fourteen might have a prejudicial "spillover effect" that could inflame or influence the jury. Again, this argument is speculative, in part because Addaquay offers little to suggest that the facts underlying this similar conduct would not be admitted anyway under Rule 404(b). Of course, while Karabani has not filed any separate brief, the Court is mindful that any admission of evidence relating to Addaquay's alleged 2019 identify fraud conduct, under Rule 404(b) or otherwise, would not presumably be relevant as to Karabani. But it is also speculative to assume that the relative strength of the evidence as to one Defendant (Addaquay) would render the jury unable to impartially assess the evidence against another Defendant (Karabani) who is not implicated in all acts. Indeed, the jury will presumably be instructed that they must consider the evidence as to each count and as to each Defendant individually. Nothing presented here shows that such standard jury instructions would be ineffective.

In short, Defendants fail to meet their high burden to show specific and compelling prejudice from joinder. Accordingly, the Motions to Sever Counts [36][41] are **DENIED**.

C.   *Motion to Sever Defendant*

Rule 8(b) of the Federal Rules of Criminal Procedure permits joinder of defendants in the same indictment when the defendants "are alleged to have

participated in the same act or transaction, or in the same series of acts of transactions, constituting an offense or offenses." Severance as to defendants can be granted but "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993); Fed.R.Crim.P. 14(a).

Defendant Addaquay seeks a separate trial from Defendant Karabani, based on *Bruton v. United States*, 391 U.S. 123 (1968), and *Crawford v. Washington*, 541 U.S. 36 (2004). Addaquay alleges that Karabani made statements to law enforcement officers "that implicate the Defendant" and that admission of those statements at a joint trial against both Defendants would violate Addaquay's Sixth Amendment rights to confront and cross-examine Karabani if she chooses not to testify.

Addaquay carries the "burden of demonstrating a problem under *Bruton*." *United States v. Wilson*, No. 10-60102-CR, 2010 WL 2609429, *8 (S.D. Fla. June 5, 2010), adopted by 2010 WL 2612341, *1 (S.D. Fla. June 25, 2010). However, Addaquay does nothing more than conclusorily allege that Karabani made statements that "implicate" Addaquay. The Court has not been supplied with those actual supposed statements, although Addaquay clearly has been furnished copies of them. Thus, the Court is unable to determine whether those statements

incriminate Addaquay and/or whether redaction of any incriminating portion of the statements would be possible. *See, e.g., Richardson v. Marsh*, 481 U.S. 200 (1987). Therefore, Addaquay does not meet his burden to obtain a severance based on *Bruton* on the existing record before the Court.

The Court **DENIES** the Motion [37] without prejudice to it being re-raised based on a proper record, and after the parties (including Karabani) confer in detail as to the allegedly incriminating statements at issue and any possible redactions the Government may propose. If there remains a dispute, including from Karabani, who has the right to object to the redaction of any statements offered against her, any party may re-file a severance or any other related motion on this topic within Thirty (30) days, but any such re-filed motion must provide enough evidentiary support to meet the burden to justify severance. Any responses to such re-filed motion are due within Fourteen (14) days after the filing of the motion, with a reply due within seven (7) days thereafter.

**CONCLUSION**

As explained above, the Motions for Bill of Particulars [34][40] are **GRANTED IN PART, DENIED IN PART**. The Government must file a Bill of Particulars or amend the Indictment within Fourteen (14) days to address the issues explained above.

The Motions for Severance of Counts [36][41] are **DENIED**.  The Motion for Severance of Defendant [37] is **DENIED WITHOUT PREJUDICE** to being re-filed, if necessary, within **THIRTY (30) DAYS**, after conferral among all parties as explained in detail above.  The Court sets a telephonic status conference for **9:30 AM**, Monday, August 17, 2020.  All time between now and the aforementioned status conference is excluded from Speedy Trial Act calculations, as the Court finds that the ends of justice served by this delay, specifically to allow for the parties to confer on and if necessary file perfected motions as to the *Bruton* severance issue, and/or to review and consider any Bill of Particulars, outweigh the parties' and the public's right to a speedy trial.

**IT IS SO ORDERED AND RECOMMENDED** this 13th day of July, 2020.

_____
**JUSTIN S. ANAND**
**UNITED STATES MAGISTRATE JUDGE**